# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| SHAHEED MUSLIM HABEEBULLAH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-4063-CV-C-NKL |
| ) | |
| LARRY CRAWFORD, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pending before the Court is Defendants' Motion for Summary Judgment and Suggestions in Support [Doc. # 181]. For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendants' Motion.

## I.     Background

This case concerns Plaintiff Shaheed Muslim Habeebullah, a/k/a Rodney Robinson, who is currently an inmate at the Jefferson City Correctional Center ("JCCC"). Defendants are current and former employees of the Department of Corrections ("DOC"), with responsibilities at JCCC. Plaintiff brings his action under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3), alleging that his rights under the First and Fourteenth Amendments were violated. Specifically, Plaintiff contends that Defendants maintain a practice and custom of making race-based cell assignments at the JCCC, conspired to maintain this practice and custom, retaliated against Plaintiff for his complaints regarding this practice and custom, and conspired to retaliate against Plaintiff.

Plaintiff is an African-American male whose requests for cell assignments with inmates of other races were routinely denied. Requests by non-African Americans to be housed with Plaintiff were also denied. According to Plaintiff, the denial of Plaintiff's requests, coupled with his experience at being assigned approximately forty black inmates as opposed to only two white inmates throughout his incarceration at JCCC, reflects the practice and custom at JCCC of making race-based cell assignments. Additionally, Plaintiff asserts that Defendant Jay Cassady (a functional unit manager, who was responsible for making cell assignments) informed him that requests for mixed-race cell assignments would be denied.

In further support, Plaintiff points to statistical evidence that although the prison population is nearly 50% white and 50% black, integrated cells only account for 6%-7% of all cell assignments. Deposition from Defendant Dave Dormire (warden at JCCC) states that blacks tended to be categorized as more "aggressive" than whites, and that more blacks were assigned to administrative segregation than whites. [Doc. # 185-7, at 19:11-16, 19:22-24, 20:19-22]. Plaintiff has also submitted affidavits from numerous inmates at JCCC that cell assignments are based on race. Plaintiff points out that he filed multiple informal resolution requests, grievances, and grievance appeals complaining about the practice and custom at JCCC of making race-based cell assignments. He also sent letters directly to Defendants, notifying them of his allegations. Plaintiff asserts that these grievances were either received, reviewed, or part of a process that was overseen by Defendants. All of Plaintiff's requests were denied. According to Plaintiff, Defendant

was put on notice of the practice and custom at JCCC of making race-based cell assignments, yet Defendants condoned it by failing to correct it.

## II. Discussion

### A. Practice and Custom of Making Race-Based Cell Assignments

Defendants state that there are deficiencies in the evidence Plaintiff relies on to demonstrate that there is a practice and custom of making race-based cell assignments at JCCC. First, Defendants argue that the statistics concerning the low proportion of integrated cells at JCCC were calculated by Plaintiff's attorney, who is not an expert, and that the statistics cover only a limited time frame. However, Plaintiff's attorney determined the percentages by examining a portion of the data provided by Defendants to Plaintiff regarding cell assignment make-up, and Defendants do not present other evidence to show that the data from the limited time frame are aberrant or unrepresentative of cell make-up at other times. Moreover, the Court finds that Defendants fail to identify how Plaintiff's attorney's basic mathematical calculations are incorrect. Defendants' arguments are directed more towards the weight to be given to the evidence at trial, and not to its sufficiency for the purposes of summary judgment.

Second, Defendants argue that many of the affidavits submitted by prisoners who state that they witnessed or experienced race-based cell assignments should not be considered by the Court because they are not notarized, appear pre-printed, and include conclusory statements. Lack of notarization does not bear on whether the declarations may be considered by the Court, as all of the prisoner declarations submitted to the Court

are signed and dated under penalty of perjury. On a motion for summary judgment, the Court may consider such declarations. *See* 28 U.S.C. § 1746. Additionally, although the Court notes that some of the declarations submitted by Plaintiff with his initial pro se Complaint appear pre-printed and appear to include conclusory statements, the Court will not dismiss them entirely. Those declarants stated their personal observations, which are admissible.

As to the merits of Plaintiff's claim, Defendants argue that no Defendant, other than Defendant Cassady, made cell assignments. Defendants state that because all Defendants except for Cassady lacked personal involvement in cell assignments, Plaintiff's section 1983 claim against these Defendants necessarily fails. *Beck v. LaFleur*, 257 F.3d 764, 765 (8th Cir. 2001).

Yet, this argument had been previously raised by Defendants when their initial Motion for Summary Judgment was before United States Magistrate Judge William Knox. In Judge Knox's report and recommendation, which the Court adopted, he acknowledged that the law is clear that supervisors cannot be held liable under section 1983 for an employee's unconstitutional actions. He cited to Plaintiff's affidavits, statistics, and Defendants' evidence that they do not consider race when making cell assignments, and stated: "Accordingly, there are genuine issues of material fact regarding whether there is a race-based discriminatory unwritten policy or custom regarding inmate cell assignments." [Doc. # 92, at 3].

However, the Court notes that because only Defendant Cassady was directly

involved in making Plaintiff's cell assignment, Plaintiff rests his theory of liability against all other Defendants on the fact they were deliberately indifferent to the violation of Plaintiff's constitutional rights. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). This theory can only be viable if Plaintiff can show that Defendants knew of the custom and policy of race-based cell assignments.

Plaintiff adequately points to evidence that raises a question of fact whether Defendants Cassady and Dormire propagated or were aware of the alleged practice and policy at JCCC of making race-based cell assignments. Such evidence includes statements made by Cassady to Plaintiff that mixed race cell assignments would not be granted, and Dormire's deposition testimony that he was aware that more blacks than whites tended to be categorized as more "aggressive" and assigned to administrative segregation and that the adult internal classification system ("AICS") affects white and black offenders differently. Contrary to Defendants' arguments, that the evidence showing Cassady's statements come from Plaintiff's own affidavit does not undermine the sufficiency of the evidence, but rather speaks to the weight to be afforded the evidence by the trier of fact.

The Court finds, however, that Plaintiff points to no evidence that any of the other Defendants were aware of the alleged practice or policy at JCCC of making race-based cell assignments prior to receipt of Plaintiff's grievances, letters, and Plaintiff's attorney's statistics. While the transmission of Plaintiff's letters to these Defendants may have then put them on notice of Plaintiff's allegations, it does not sufficiently show that these

5

Defendants had actual knowledge that there existed a practice and policy of assigning cells based on race. Indeed, "[Section] 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance." *Jones v. Caruso*, No. 1:10-cv-812, 2011 U.S. Dist. LEXIS 42029, at *11 (W.D. Mich. Apr. 14, 2011) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Thus, the Court grants summary judgment as to this claim for all Defendants other than Defendants Cassady and Dormire.

### B.     Retaliation

A prima facie case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline. *Meuir v. Greene County Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007). Here, Plaintiff states that he never had a history of sexual misconduct violations until his complaints of racial segregation at JCCC. Plaintiff also points to the fact that there was a significant increase in the number of conduct violations on his record after his initial complaints. Plaintiff cites to affidavits of witnesses that he was subject to frequent cell searches and his legal documents were removed from his cell by JCCC officers. Plaintiff ultimately argues that because Defendants failed to launch a "proper investigation and take corrective actions" after Plaintiff notified Defendants that he was being retaliated against, Defendants tacitly authorized the retaliation. [Doc. # 185, at 29]. In essence, Plaintiff points to the discipline he received by JCCC officers after he filed his grievances, coupled with

Defendants' failure to respond to his complaints of retaliation, and argues that there is sufficient evidence to demonstrate retaliation by Defendants.

While Plaintiff presents evidence of discipline subsequent to his initial complaints, he fails to present any evidence that the JCCC officers who disciplined Plaintiff were motivated by Plaintiff's complaints. Further, none of the Defendants placed Plaintiff in administrative segregation and none of the Defendants searched his cell. Defendants also identify legitimate penalogical reasons why Plaintiff was placed in administrative confinement. Thus, because Plaintiff fails to show that the JCCC officers who disciplined him–who are not defendants in this case–did so in order to retaliate against him, he likewise cannot show that Defendants "tacitly authorized" retaliatory conduct because Plaintiff fails to show there exists underlying misconduct by the JCCC officers. Plaintiff cannot bootstrap a retaliation claim against Defendants upon a failed showing of retaliation. Summary judgment is granted as to this issue because Plaintiff fails to demonstrate a prima facie case of retaliatory discipline.

### C. Conspiracy

Plaintiff asserts two conspiracy claims. First, that Defendants conspired to make race-based cell assignments, and second, that Defendants conspired to retaliate against Plaintiff for filing his complaints about the alleged policy and practice of race-based cell assignments. As previously discussed, evidence shows only that two of the Defendants, Cassady and Dormire, were aware either that race was a factor or could have been a factor in cell assignments. Because there remains a factual dispute as to whether there is

a policy or custom at JCCC to make race-based cell assignments, such a policy or custom could be interpreted by a reasonable juror to be an "agreement." Thus, it remains in dispute whether there was an "agreement" among Defendants Cassady and Dormire to make race-based cell assignments. Therefore, summary judgment is not appropriate on this conspiracy claim.

However, because Plaintiff's retaliation claim has been dismissed as to all Defendants, his retaliation conspiracy claim must be dismissed as well.

**D.     Damages**

In his Third Amended Complaint, Plaintiff asks for "actual and punitive" damages for Defendants' alleged violations of Plaintiff's rights under the First and Fourteenth Amendments. [Doc. # 191, at 6-11]. Title 42 U.S.C. sec 1997e(e) "limit[s] recovery for mental or emotional injury in all federal actions brought by prisoners" if no prior physical injury is shown. *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004). Plaintiff argues that his claims are not premised on emotional or mental injuries. [Doc. # 191 (Complaint contains no allegation of mental or emotional injury); Doc. # 185 (Plaintiff states that his claims are violations of his constitutional rights, not for mental or emotional injury)]. True, Plaintiff does not allege mental or emotional injuries. However, Plaintiff states in briefing that he "suffered extensive psychiatric and mental health problems as a result of Defendants' violations of Plaintiff's constitutional rights." [Doc. # 185, ¶ 94]. Thus, to the extent that Plaintiff's claims do involve recovery for mental and emotional injury, the Court finds that the physical injury requirement of 42 U.S.C. § 1997e(e) applies–Plaintiff

8

will be limited to recovery of nominal and punitive damages if Plaintiff fails to meet the physical injury requirement. *See Royal*, at 723.

However, it is inappropriate for the Court, on Defendants' pre-trial motion, to limit Plaintiff's potential recovery based on 42 U.S.C. § 1997e(e). First, there is no requirement that Plaintiff plead a physical injury. *See id.*; *see also Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) ("[P]hysical injury is merely a predicate for an award of damages for mental or emotional injury, not a filing prerequisite for the federal civil action itself."). Thus, that Plaintiff has not alleged any physical injury in his Third Amended Complaint is not dispositive of whether he may recover for physical injury. Indeed, Plaintiff requested compensatory damages in his complaint and the evidence may demonstrate that he suffered the requisite physical injury. Second, the Court finds that the record shows some evidence that Plaintiff has satisfied the physical injury requirement of section 1997e(e). Plaintiff has attempted suicide on multiple occasions after Defendants committed the alleged misconduct. The Court notes that suicide attempts can satisfy the physical injury requirement. *See, e.g.*, *Arauz v. Bell*, 307 F. Appx. 923, 929 (6th Cir. 2009); *Scarver v. Litscher*, 371 F. Supp. 2d 986, 997 (W.D. Wis. 2005); *Ramirez v. Ferguson*, No. 08-cv-5038, 2011 U.S. Dist. LEXIS 34625, at *59 (W.D. Ark. Mar. 29, 2011).

True, Defendants accurately point out that Plaintiff admitted in a deposition that he suffered from no physical injuries due to the alleged violations by Defendants [Doc. # 181-1, at 56:19-25] and the medical records and suicide watch reports submitted by

9

Plaintiff do not note that Plaintiff's suicide attempts were caused by Defendants' alleged violations. However, it is for the trier of fact to weigh all of the evidence to determine whether Plaintiff suffered physical harm due to Defendants' alleged misconduct. Summary judgment limiting Plaintiff's recovery to nominal or punitive damages is denied.

### E. Injunctive Relief

In his Third Amended Complaint, Plaintiff asks the Court to enjoin Defendants from making race-based cell assignments at JCCC. Defendants argue that Plaintiff is not entitled to injunctive relief because he failed to establish that cell assignments at JCCC are based on race and because Defendant Cassady no longer works at JCCC. That Cassady no longer works at JCCC does not affect whether Plaintiff is entitled to his requested relief– enjoining the practice or policy of making race-based cell assignments at JCCC. Because it remains a disputed issue of fact whether there exists such a policy and custom, and because Dormire, the warden at JCCC, remains a defendant in this case, summary judgment as to this issue is denied.

## III. Conclusion

Accordingly, it is hereby

ORDERED that Defendants' Motion for Summary Judgment and Suggestions in Support [Doc. 181] is GRANTED for all Defendants as to any claims of retaliation and conspiracy to retaliate; GRANTED for Defendants Clements, Crawford, Galloway, Garnett, Kemna, Lombardi, and Long as to the remainder of Plaintiff's claims; DENIED

for Defendants Cassady and Dormire as to the remainder of Plaintiff's claims; and

DENIED as to limiting Plaintiff's requested relief.

                                                s/ Nanette K. Laughrey
                                                NANETTE K. LAUGHREY
                                                United States District Judge

Dated: June 17, 2011
Jefferson City, Missouri